NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAITLIN RYERSON, | : | |
| Plaintiff, | : | Civil Action No. 06-1214 - (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, COUNTY OF MORRIS, TOWNSHIP OF MOUNT OLIVE, ROCKAWAY TOWNSHIP, TOWNSHIP OF WASHINGTON (COUNTY OF MORRIS), RICHARD RICCO, EDWARD O'ROURKE, STEPHEN ZOELLER, CHARLES TREMBLAY, JESSICA GROBLEWSKI, MARCH LERNER, SUSAN GILLIGAN, SERGEANT MICHAEL ROGERS, LIEUTENANT CATHI FENSKE, DETECTIVE CHARLES BRADY, JOHN CZOHLA, MICHAEL RUBBINNACIO, JOSEPH DIVINE, ROBERT WEBER, MELANIE SMITH, UNNAMED PROSECUTORS AND UNNAMED LAW ENFORCEMENT PERSONNEL IN THE COUNTY OF MORRIS, NEW JERSEY STATE ATTORNEY GENERAL ZULIMA FARBER, | : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on Defendants' motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative to stay this action. Defendants State of New Jersey

1

("New Jersey") and the Attorney General of the State of New Jersey, Zulima Farber ("Farber") (collectively, the "State Defendants") are the movants. Defendant County of Morris ("Morris") has also joined in the State Defendants' motion. For the reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part. Defendants' motion to stay will be denied.

## I. INTRODUCTION

On March 15, 2006, Plaintiff Caitlin Ryerson, a.k.a. Janet Gelman ("Plaintiff" or "Ryerson"), appearing *pro se,* filed the instant action against Defendants. On May 8, 2006, Ryerson filed an Amended Complaint, seeking damages and declaratory relief from, among others, New Jersey and Farber, in her individual and official capacities. Ryerson's Amended Complaint asserts the following causes of action for relief against New Jersey and Farber: (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) violation of the Due Process clause of the Fourteenth Amendment; (3) violation of the Establishment Clause of the First Amendment; (4) unconstitutional conversion of "disorderly persons offenses" into felonies; (5) unconstitutional deprivation of Ryerson's right to a jury trial; and (6) disenfranchisement in violation of Section 2 of the Fourteenth Amendment.

On August 7, 2006, Ryerson filed a Second Amended Complaint.[1] Ryerson's Second

---

[1] While noting that Ryerson's Second Amended Complaint was filed without leave of this Court, the State Defendants do not move to strike it. Rather, they address its deficiencies, and extend their motion to dismiss Ryerson's Amended Complaint to the allegations in her Second Amended Complaint. FED. R. CIV. P. 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." This Court finds that although Ryerson failed to seek leave or consent to file her Second Amended Complaint, in the absence of any motion or valid reason to strike that complaint, justice requires that this Court

Amended Complaint is virtually identical to her Amended Complaint, except that it asserts additional causes of action against New Jersey for (1) failure to train for sexual harassment; (2) sexual harassment; (3) failure to train; (4) malicious prosecution; (5) deliberate indifference in training and supervision; and (6) additional due process violations.

On August 10, 2006, the State Defendants filed a motion to dismiss Ryerson's Amended Complaint, pursuant to FED. R. CIV. P. 12(b)(6), asserting Eleventh Amendment, Sovereign Immunity, and § 1983 defenses, as well as requesting that this Court abstain from rendering a decision in this matter until a parallel criminal matter, pending before the New Jersey Superior Court, Appellate Division, is resolved. The State Defendants also argue that Ryerson's Amended Complaint fails to meet the standard for injunctive relief. In the alternative, the State Defendants move to stay this matter pending the outcome of an appeal of the parallel criminal matter. The State Defendants' Reply addresses and extends their motion to dismiss or stay to Ryerson's Second Amended Complaint.

On November 1, 2006, Defendant Morris filed a letter joining the State Defendants' motion.

## II.  FACTUAL BACKGROUND

In 1989, Ryerson was arrested and pled guilty to engaging in prostitution under N.J.



grant Ryerson leave to file her Second Amended Complaint.  Accordingly, this Court will address the merits of Defendants' motion vis-a-vis Ryerson's Second Amended Complaint, which is now the operative complaint in this action.  See Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 706 n.2 (1982) ("once accepted, an amended complaint replaces the original").

3

STAT. ANN. § 2C:34-1.[2]  (Second Amended Complaint ("Compl.") , ¶ 15.)

Ryerson alleges that, in March 2004, the Morris County Prosecutor's Office ("MCPO") organized a sting operation directed at outcall massage services.  (Compl., ¶ 50.)  According to Ryerson, this sting operation "included calling women to hotel rooms under the guise of employment, creating a hostile work environment and having a police officer demand sexual favors for money."  (Id.)

Ryerson contends that prior to March 19, 2004, a man identifying himself as "Ed Johnson" called her at least twice: once to make an appointment for 7 p.m. at the Rockaway Hilton, and once to confirm the time of his appointment. (Id., ¶ 97.)

On March 19, 2004, at approximately 7:00 p.m., Ryerson entered room 202 of the Rockaway Township Hilton Garden Inn.  (Id., ¶ 98.)  A man, later identified as Officer Edward O'Rourke from the Dover Police Department, was in the hotel room.  (Id., ¶ 99.)  Ryerson claims she had been having a casual conversation with Officer O'Rourke for less than a minute, when he began acting extremely angry, and paced up and down the hotel room yelling.  (Id.)  According to Ryerson, O'Rourke, who was standing between Ryerson and the hotel room door, engaged in this angry behavior for several minutes.  (Id.)  Ryerson contends that she asked O'Rourke for identification, and that he responded by throwing his wallet, which contained several inconsistent forms of identification, on the bed. (Id., ¶¶ 99-100.)  Ryerson noticed that the door to the adjoining room was open, and as she purportedly  walked over to close it, O'Rourke said, "Miss

---

[2]N.J. STAT. ANN. § 2C:34-1 provides that an individual engages in prostitution if she partakes of "sexual activity with another person in exchange for something of economic value, or the offer or acceptance of an offer to engage in sexual activity in exchange for something of economic value." N.J. STAT. ANN. § 2C:34-1(a)(2).

don't open that door. My partner is sleeping in there." (Id., ¶ 103.) At that point, Ryerson asserts that she told O'Rourke he seemed too angry and she wanted to leave. (Id., ¶ 104.) O'Rourke purportedly stood blocking the door in a threatening manner, and Ryerson did not think she could move past him. (Id.) While he was standing in front of the door, O'Rourke purportedly shouted that someone else was coming. (Id., ¶ 105.) Then he shouted, "I called and cancelled." (Id.) Ryerson contends that she was unsure whether this last comment was meant for her or the other person approaching.

Ryerson claims that she then asked O'Rourke if he wanted her to leave, but he asked if she would stay if he calmed down. (Id., ¶¶ 106-07.) O'Rourke allegedly sat down on the bed and began to watch television. Ryerson contends that she sat down on the bed a few feet from him, and told him she had to pick up the money. (Id., ¶¶ 107-10.) O'Rourke allegedly again began to shout at Ryerson, screaming, "How much for anal intercourse?," or something to that effect. (Id., ¶ 111.) Ryerson contends that she immediately ran away from him, and told him that she did not like his questions and that she was leaving. (Id., ¶ 113.) Ryerson contends that she never took any money from O'Rourke, nor did she throw money back at him. (Id., ¶ 114.)

A minute later, another man with long dark hair chased Ryerson down the hall. Ryerson purportedly told the long-haired man that O'Rourke was scaring her. (Id., ¶ 116.) The man gestured Ryerson into Room 203, which was filled with a number of people, none of whom identified themselves as officers of the law, or told her she was under arrest. (Id., ¶ 117.) Ryerson was then arrested for engaging in prostitution, in violation of N.J. STAT. ANN. § 2C:34-1. (Id., ¶¶ 118-20.)

After Ryerson's arrest, the MCPO transferred the matter from the Rockaway Municipal

5

Court to Superior Court in Morris County, as a fourth degree indictable offense under N.J. STAT. ANN. § 2C:34-1b(1) and § 2C:34:1c(4).[3] (Hale Cert., Exh. A, Corazza Cert., ¶ 3.) The matter was presented to the Morris County Grand Jury, which returned an indictment for the fourth degree indictable offense of engaging in prostitution by an individual who has a prior conviction for such an offense. (Id.)

On March 21, 2006, Judge Salem V. Ahto dismissed the fourth degree offense indictment, without prejudice, because he disagreed that Ryerson's 1989 offense should be considered a first offense for purposes of N.J. STAT. ANN. § 2C:34-1(c)(4). (Hale Cert., Exh. B, Order Dismissing Indictment.)  On March 21, 2006, Judge Ahto also denied the state's motion for reconsideration of his order dismissing the indictment. (Hale Cert., Exh. C, Order Denying Motion for Reconsideration.)

On April 7, 2006, the MCPO filed a motion for leave to appeal, which was granted by the New Jersey Superior Court, Appellate Division on May 2, 2006. (Hale Cert., Exh. D, Order Granting Leave to Appeal.)  As of the date the State Defendants filed the instant motion, the MCPO's appeal was still pending.[4] (Def.'s Br. at 10.)

### III. DISCUSSION

#### A.   Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6),

---

[3]N.J. STAT. ANN. § 2C:34-1(c)(4) provides that a second offense of N.J. STAT. ANN. § 2C:34-1b(1), i.e., engaging in prostitution, or conviction for such an offense constitutes a crime of the fourth degree.

[4]By a letter dated November 29, 2006, the State Defendants' counsel informed this Court that the MCPO's appeal was still pending as of that date.

6

the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. "When a plaintiff does not seek leave

7

to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

### B. Whether The Eleventh Amendment Bars Recovery Against The State Defendants And Morris

#### 1. *Legal Standard Governing Eleventh Amendment Immunity*

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." Lapides v. Bd. of Regents, 535 U.S. 613, 616 (2002); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983""). Claims against state officers, acting in their official capacity, are treated as suits against the state itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1986) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); Brandon v. Holt, 469 U.S. 464, 471-72 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"); Monell v. Dep't. of Social Services, 436 U.S. 658, 690 n. 55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); Miranda B. v. Kitzhaber, 328 F.3d 1181, 1188 (9th Cir. 2003) ("a suit against a state official in his or her official capacity is not a suit against the official but a suit against the official's office," quoting Will, 491 U.S. at 71). Any claims asserted against an arm of the state, or against an official thereof acting in his or her official capacity, must be dismissed, unless certain exceptions apply.

### 2.     *Exceptions To Eleventh Amendment Immunity*

The Supreme Court has recognized certain exceptions to the Eleventh Amendment.  "The Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983."  Hafer v. Melo, 502 U.S. 21, 31 (1991).

The Eleventh Amendment's protections against suit also do not extend to local governments or officials.  See Monell, 436 U.S. at 690 ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers").

Another exception occurs when a state waives its immunity and consents to suit in federal court.  Welch v. Texas Dept. of Highways and Public Transp., 483 U.S. 468, 473 (1987) (citing Clark v. Barnard, 108 U.S. 436, 447 (1883)).

The Eleventh Amendment also "necessarily [is] limited by the enforcement provisions of § 5 of the Fourteenth Amendment."  Welch, 483 U.S. at 473 (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)).  Consequently, Congress can abrogate the Eleventh Amendment without the states' consent when it acts pursuant to its power "'to enforce, by appropriate legislation' the substantive provisions of the Fourteenth Amendment."  Id. (quoting U.S. CONST., AMENDMENT 14, § 5).

The Supreme Court has specifically found that, through the passage of Title VII, Congress abrogated the Eleventh Amendment, pursuant to its Section 5 powers.  A private citizen, therefore, can sue a state under Title VII in federal court.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  See also Perez v. Region 20 Educ. Service Center, 307 F.3d 318, 326 (5th

Cir. 2002) ("Congress has clearly abrogated the states' Eleventh Amendment immunity in enacting Title VII"); Hunt v. State of Missouri, Dept. of Corrections, 297 F.3d 735, 743 (8th Cir. 2002) (the Eleventh Amendment did not bar Title VII claims against Missouri Department of Corrections ("DOC") by female contract nurses employed by DOC); Holman v. Indiana, 211 F.3d 399, 402 n.2 (7th Cir. 2000) ("The Eleventh Amendment does not bar the Holmans' Title VII claims"); Jones v. Washington Metropolitan Area Transit Authority, 205 F.3d 428, 434 (D.C. Cir. 2000) ("we see no bar to awarding pre-judgment interest on back pay assessed against a state under Title VII, as to which the Congress expressly and effectively abrogated Eleventh Amendment immunity").

### 3. *Whether The Eleventh Amendment Bars Suit Against The State Defendants and Morris*

Ryerson asserts claims against the State Defendants and Morris, pursuant to 42 U.S.C. § 1983[5] and Title VII of the Civil Rights Act of 1964 ("Title VII"). Ryerson also asserts claims against New Jersey for malicious prosecution and unconstitutional conversion of "disorderly persons offenses" into felonies.

This Court finds that the Eleventh Amendment bars Ryerson's § 1983 claims against the State of New Jersey and Defendant Farber, to the extent she is sued in her official capacity. The State of New Jersey has not waived its immunity, nor has Congress abrogated state immunity to such claims. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 120 (1984) ("if a §

---

[5]In her Second Amended Complaint, Ryerson asserts a myriad of claims for violations of her constitutional rights. While she does not specify that all of these claims are brought pursuant to 42 U.S.C. § 1983, this Court will construe them as being brought pursuant to § 1983, without which private causes of action against governmental entities for constitutional violations could not lie.

1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim"); Will, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). The State Defendants' motion to dismiss Ryerson's § 1983 claims against the State of New Jersey and Farber, in her official capacity, is granted.

This Court similarly finds that the Eleventh Amendment bars Ryerson's claims against New Jersey for malicious prosecution and unconstitutional conversion of "disorderly persons offenses" into felonies. New Jersey has not waived its immunity, nor has Congress abrogated state immunity to such claims.[6]

This Court, however, denies the State Defendants' motion to dismiss Ryerson's § 1983 claims against Farber in her individual capacity because, as this Court has explained, the Eleventh Amendment does not protect state officers from suit as individuals. See Hafer, 502 U.S. at 31.

This Court also denies the State Defendants' motion to dismiss Ryerson's Title VII claims against New Jersey, pursuant to the Eleventh Amendment.[7] As this Court has explained, the Eleventh Amendment does not bar suits against the state or its officers for violations of Title VII. Fitzpatrick, 427 U.S. at 456.

The Eleventh Amendment also does not bar suit against Morris, a local entity, because, as

---

[6]Ryerson urges this Court to overturn hundreds of years of Supreme Court jurisprudence so that her claim may survive the State Defendants' Eleventh Amendment challenge. This Court is controlled by Supreme Court authority. The Eleventh Amendment and sovereign immunity preclude her claim.

[7]Ryerson does not purport to state a Title VII claim against Farber.

this Court has explained, the protections afforded by the Amendment do not extend to municipal entities.  See Monell, 436 U.S. at 690.  This Court therefore denies Morris' motion to dismiss, pursuant to the Eleventh Amendment.

In sum, this Court grants the State Defendants' motion to dismiss Ryerson's claims, pursuant to § 1983 against the State of New Jersey and Farber, in her official capacity.  This Court denies the State Defendants' motion to dismiss Ryerson's Title VII claims against New Jersey and her § 1983 claims against Farber in her individual capacity, to the extent their motion is made pursuant to the Eleventh Amendment.[8]  This Court also denies Defendant Morris' motion to dismiss Ryerson's claims against the municipality, pursuant to the Eleventh

---

[8] The State Defendants argue for the first time in their reply that Ryerson's Title VII claims against New Jersey must be dismissed because: (1) Ryerson was not an employee of the state; and (2) Ryerson failed to exhaust her administrative remedies.  (Defs.' Reply at 5.)  "It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than [those that were] presented in the moving papers."  William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 12:107 (The Rutter Group 2005); see Gambra v. International Lease Financial Corp., 377 F. Supp.2d 810, 827, n.18 (C.D. Cal. 2005) ("defendants' reply brief and supporting materials do not raise new matters and should not be stricken"); Burnham v. City of Rohnert Park, No. C 92-1439, 1992 WL 672965, * 5 (N.D. Cal. May 18, 1992) ("[R]eply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion").  For this reason, this Court has discretion to decline to consider new facts or arguments raised in a reply.  See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief.");  Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief. . . .  The reasons are obvious.  It robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result").  Contrary to the State Defendants' contention, Ryerson clearly purports to set forth Title VII claims against New Jersey in her complaint.  Any deficiencies in these claims should have been addressed in the State Defendants' opening brief.  Because Ryerson has been denied an opportunity to respond to the State Defendants' newly asserted arguments, this Court will not consider them in ruling on the pending motion to dismiss.  Should the State Defendants or Morris choose to have this Court address the newly-asserted challenges to Ryerson's Title VII claims, they may do so through a proper motion.


Amendment.[9]

### C. Whether The Complaint Alleges Any Claims Against The Attorney General In Her Individual Capacity

The State Defendants also move to dismiss Ryerson's § 1983 claims against Farber, in her individual capacity, on the ground that Ryerson has failed to allege that Farber was personally involved in the alleged constitutional deprivations she suffered. This Court agrees.

For a § 1983 claim to lie against an individual defendant, the plaintiff must "allege [ ] personal involvement of th[at] defendant[ ]; it is well-established that there is no respondeat superior liability in § 1983 actions." Coleman v. Beard, 131 Fed. Appx. 10, 11 (3d Cir. May 13, 2005). See also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity") (citations omitted).

Ryerson fails to allege any personal involvement by Farber in the conduct, which she claims violated her constitutional rights. In fact, Ryerson concedes her latest complaint's

---

[9]This Court notes that the State Defendants' motion to dismiss Ryerson's § 1983 claims against Farber, individually, is denied to the extent that they argue that she is not a "person" amenable to suit under § 1983. As the Supreme Court found in Will v. Michigan Dept. Of State Police, 491 U.S. 58, a state or state official, acting in his or her official capacity is not a "person" within the meaning of § 1983. Will, 491 U.S. at 71. A state official acting in his or her individual capacity, however, is a "person" amenable to suit under § 1983. See Hafer, 502 U.S. at 31 ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983").

Morris' motion to dismiss the § 1983 claims against it on the ground that he is not a "person" amenable to suit is similarly denied. As the Supreme Court found in Monell, a municipality is a "person" subject to suit under § 1983. Monell, 436 U.S. 658, 688-89.

deficiency in this respect, and acknowledges that she should not have sued Farber in her individual capacity under § 1983. (Pl.'s Br. at 14.) For these reasons, this Court grants the State Defendants' motion to dismiss Ryerson's § 1983 claims against Farber in her individual capacity.

### D.    Whether This Court Must Abstain From Hearing This Matter

The State Defendants, joined by Morris, next argue that this Court should abstain from hearing this matter because there are pending criminal proceedings against Ryerson. They argue for abstention, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994) and Younger v. Harris, 401 U.S. 37 (1971).

#### 1.    *Heck v. Humphrey*

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that "if a state criminal defendant brings a federal civil rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings." Id. at 487 n. 8 (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)). Under Heck, abstention is appropriate in circumstances where "success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence." Muhammad v. Close, 540 U.S. 749, 751 (2004). Under such circumstances, "the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." Id.

Here, Humphrey does not bar this Court's consideration of Ryerson's claims. A favorable termination of the pending criminal charges against her has been made, i.e., the indictment charging Ryerson has been dismissed. (Hale Cert., Exh. B, Order Dismissing Indictment; Hale Cert., Exh. C, Order Denying Motion for Reconsideration.) Thus, any

determinations made by and in this Court would not challenge the validity of a conviction or duration of sentence.  See Muhammad, 540 U.S. at 751.

That an appeal of the trial court's dismissal of the indictment against Ryerson has been brought by the state and remains pending, does not render the state criminal action an ongoing parallel state-court proceeding warranting this Court's abstention from the instant matter.  There is no ongoing state-court proceeding; the indictment has been dismissed.  To the extent Defendants' motion to dismiss is premised on Heck v. Humphrey, it is denied.

### 2. *Younger Abstention*

Younger v. Harris, 401 U.S. 37 (1971), and its progeny, espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.  The policy underlying Younger abstention includes the notion of "comity," which consists of "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."  Id. at 44.  "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights."  Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).

In Samuels v. Mackell, 401 U.S. 66 (1971), the Supreme Court concluded that the comity and federalism principles outlined in Younger extend to limit the federal court's ability to issue declaratory judgments concerning state statutes that are the subject of an ongoing state criminal proceeding.

Here, as this Court has found, the MCPO's appeal of the trial judge's dismissal of the indictment against Ryerson does not render the criminal action against her a "pending proceeding." The indictment has been dismissed, and there are no pending criminal charges against Ryerson. This Court finds that Younger abstention is not appropriate in this context, as a result. Defendants' motion to dismiss Ryerson's claims, pursuant to Younger, is denied.

### E.  Whether This Matter Should Be Stayed Pending The Outcome Of The State Court Appeal

The State Defendants, joined by Morris, argue that if this court declines to dismiss this case for failure to state a claim, or pursuant to the various abstention doctrines, it should stay this matter pending the outcome of the state's appeal of the order dismissing the indictment against Ryerson.

A court's power to stay a pending action "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). A district court has broad discretionary power to stay proceedings. Bechtel Corp. v. Local 215, Laborers' Int'l Union, 544 F.2d 1207, 1214 (3d Cir. 1976). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Id. See 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1838 (2d ed.1987).

While certain of Ryerson's claims might be affected should the appellate division reinstate the indictment charging her, this Court declines to exercise its discretion to stay this

action pending the outcome of the state court appeal.[10]

### F.  Whether Plaintiff's Complaint Should Be Dismissed For Failure To Meet The Standard For Injunctive Relief

Defendants further argue that Ryerson's Complaint should be dismissed because she cannot demonstrate a likelihood of success on the merits of her claim.  Defendants' arguments are not proper on a 12(b)(6) motion to dismiss, as they go to what evidence should be adduced on a motion for a preliminary injunction, rather than the sufficiency of the allegations in the operative complaint.  Ryerson has not brought a motion for a preliminary injunction in this case.  Thus, Defendants' motion to dismiss Ryerson's action on the ground that she has failed to meet the standard for injunctive relief is denied.

### IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part.  Ryerson's § 1983 claims against New Jersey and Farber, in her official and individual capacity, are dismissed with prejudice.[11]  All other claims survive Defendants' motion to dismiss.

For the reasons stated above, the State Defendants' motion to stay this matter is denied.

Dated: March 6, 2007

                                       S/Joseph A. Greenaway, Jr.  
                                       JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[10] This Court orders the parties to notify this Court when the state appellate court issues a decision on the pending appeal.

[11] Because Ryerson's claims against New Jersey and Farber in her official capacity are barred by the Eleventh Amendment, and because Ryerson has conceded that there is no factual basis for her to hold Farber liable in her individual capacity, this Court finds that allowing Ryerson to amend her § 1983 claims against these entities would be futile.